Rose M. NELSON

v.

Louis W. SULLIVAN, M.D.[1]

Civ. A. No. 88–4897.

United States District Court,
E.D. Pennsylvania.

June 8, 1990.

1. Louis M. Sullivan, M.D., as successor to Otis R. Bowen, M.D., the former Secretary of Health and Human Services, is substituted as defendant in this action, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Robert G. Leino, Eagleville, Pa., for plaintiff.

Cynthia J. Giles, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action, an appeal of a denial of Social Security Disability Benefits, was filed in June of 1988. On October 12, 1988, this matter was referred to Magistrate William F. Hall, Jr., for the preparation of a report and recommendation on cross-motions for summary judgment.[2] On December 5, 1989, a report and recommendation was filed, recommending that plaintiff's motion for summary judgment be granted and the government's motion denied. The government filed a timely objection to the recommendation.

Magistrate Hall first recommends reversal of the decision of the Administrative Law Judge ("ALJ") on the ground that the decision was not supported by substantial evidence. Magistrate Hall found the ALJ's reliance on a hypothetical posed to the vocational expert contrary to the findings of fact subsequently made by the ALJ, and

further questioned the reliance of the ALJ on the reports of non-treating Health and Human Services doctors. As a whole, he found the record insufficient to support the conclusion of the ALJ that Ms. Nelson is not disabled. Magistrate Hall also recommends that benefits be awarded without remand because there is "adequate evidence in the record to find [the] plaintiff is disabled." Report and Recommendation, p. 14.

In its objection, the government challenges both of Magistrate Hall's recommendations, asserting that the vocational expert's testimony supports the finding of the ALJ there is an inconsistency and that in any event, any inconsistency is irrelevant, because:

[v]ocational expert testimony was not required in this case because the Administrative Law Judge did not find that plaintiff's ability to perform the full range of medium work was reduced by any exertional or non-exertional limitations. *See Washington v. Heckler*, 756 F.2d 959, 967 (3d Cir.1985).

Objection, pp. 1–2. The government also contends that the record, in its entirety, supports the decision of the ALJ.

## I.

The government's first two objections miss the thrust of the Report and Recommendation. As pointed out by Magistrate Hall, the ALJ stated in his opinion that he placed great weight on the testimony of the vocational expert, Bruce B. Martin, and particularly relied on his testimony that "there [were] jobs available the claimant could perform," and his enumeration of particular jobs he thought would be suitable. Decision, T.R. p. 12. Having stated that he relied on Mr. Martin's testimony, the ALJ's use of the testimony is subject to review, whether or not the ALJ was required to seek that expertise.

The expert testimony relied upon by the ALJ was elicited as a response to a hypothetical proposed by the ALJ, in which the ALJ assumed, among other factors, that

**2.** A copy of the Report and Recommendation is found at Exhibit A.

the plaintiff could stand or sit for 6–8 hours. In response to the hypothetical, the vocational expert testified that there were several jobs in the workforce open to someone of those capabilities.

The troubling feature of the ALJ's decision is that the ALJ, having posed the hypothetical assuming 6–8 hours of standing or sitting, and having stated his reliance on the testimony elicited by that set of characteristics, then found:

> the claimant is able to stand and walk for approximately one or two hours without interruption, able to sit for about one or two hours without interruption, able to alternate between sitting and standing

Decision, T.R. 12. It appears that, in making this finding, the ALJ was relying on the opinion of treating physician Dr. Arnold Lincow, the only physician to state any limitations about Ms. Nelson's tolerance for sitting and standing. Dr. Lincow's assessment was that, in an 8–hour work day, Ms. Nelson could stand or walk for a *total* of 1–2 hours, and could sit for a *total* of 1–2 hours. T.R. at 224. In the light of this finding, plaintiff argues, and Magistrate Hall agrees, that the ALJ's reliance on the vocational expert's testimony is suspect.

In the light of this apparent confusion about Ms. Nelson's sitting and standing capacities, I agree with Magistrate Hall that the ALJ's conclusion that Ms. Nelson can perform the full range of medium work is not supported by the evidence.[3] For this reason, I agree with Magistrate Hall's recommendation that the denial of disability benefits be reversed.

## II.

■ Magistrate Hall next concludes that remand would only cause delay, because the record clearly supports a finding of disability. I disagree. In my review of Ms. Nelson's medical history[4] I find it impossible to conclude, as Magistrate Hall does, that the evidence clearly supports disability. Magistrate Hall states:

> [T]he [vocational expert] testified that if plaintiff could only sit, stand or walk for a maximum of two hours out of an eight hour day, she could not meet the exertional requirements of any level of work. The ALJ, however, erroneously found, despite the opinion of the [vocational expert], that plaintiff would do medium work, even though he accepted the limitations as set forth in Dr. Lincow's report. Therefore, since the record shows that if plaintiff was limited as described by Dr. Lincow, and since the ALJ accepted Dr. Lincow's findings, he could only conclude that plaintiff was disabled.

Report and Recommendation, p. 14. As noted previously, it is my reading of Dr. Lincow's report, a three-page questionnaire attached to the claimant's benefits application, that Ms. Nelson is able to sit, stand or walk for a total of 2–4 hours of an eight hour work day. Thus, even if one accepts both the report of Dr. Lincow and the testimony of the vocational expert, Ms. Nelson is not clearly disabled.

---

**3.** The confusion in the record regarding the issue of plaintiff's limited sitting and standing capabilities and the impact those limitations may have on plaintiff's ability to do medium work is further compounded by the vocational expert's testimony on cross-examination. During cross-examination a hypothetical was posed to the vocational expert by plaintiff's counsel which included the parameters of "sitting and standing, one to two hours maximum and lifting parameters as lifting very little throughout the day." T.R. 55. In response to plaintiff's counsel's hypothetical, the vocational expert concluded that "one to two hours of standing and sitting capacity ... alone would prohibit employment at any exertional level."

Plaintiff's counsel's hypothetical, and the vocational expert's understanding of it, seems to have been based on a misreading of Dr. Lincow's report—namely that the plaintiff can sit and stand together for a total of 1–2 hours. Dr. Lincow's report concludes that plaintiff can sit for a maximum of two hours and stand for a maximum of two hours, and therefore can sit and stand together for a maximum of four hours. Nonetheless, this qualification of the expert's assessment is important and pertinent and should have been considered by the ALJ.

**4.** Both Magistrate Hall's Report and Recommendation (pp. 2–9) and the ALJ decision (T.R. pp. 9–12) detail the results of Ms. Nelson's examinations and tests, and her testimony at the hearing; that exercise will not be repeated here.

■ Nor is the balance of the record dispositive. Where "substantial and uncontradicted" evidence in the record supports a finding of disability, reversal without remand is proper. *Gilliland v. Heckler*, 786 F.2d 178, 185 (3d Cir.1986). In this case the medical reports of Ms. Nelson's condition, taken cumulatively, are inconclusive.[5] The medical reports, taken as a group clearly support the conclusion that Ms. Nelson is unable to perform past work. And some of the reports offer a basis for the conclusion that Ms. Nelson is incapable of performing medium work as described in the federal regulations. But it is not clear on the record as a whole, that the ALJ "could only conclude that plaintiff [is] disabled." Report and Recommendation, p. 14.

For this reason, I do not adopt Magistrate Hall's recommendation that benefits be awarded. Instead I will direct that this matter be remanded to the Secretary so that Ms. Nelson's claim can be reconsidered in a manner which conforms with the principles recited in this opinion. An appropriate order follows.

### ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED that

(1) plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

(2) defendant's motion for summary judgment is DENIED;

(3) the report and recommendation of Magistrate Hall is MODIFIED; and

(4) the decision of the Administrative Law Judge is VACATED and this matter is REMANDED to the Secretary for further proceedings consistent with this order.

### APPENDIX

### EXHIBIT A

In the United States District Court

for the Eastern District of Pennsylvania

Civil Action No. 88–4897

Filed Dec. 5, 1989

Rose M. Nelson

v.

Louis W. Sullivan,[1] Secretary of Health and Human Services

### REPORT AND RECOMMENDATION

WILLIAM F. HALL, JR., United States Magistrate.

This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Secretary of Health and Human Services ("Secretary"), denying the plaintiff's claim for disability and Supplemental Security Income ("SSI") benefits under titles II and XVI. Before the court are the parties' cross-motions for summary judgment. I recommend that plaintiff's motion be granted and that the case be remanded to the Secretary for the calculation and award of benefits.

The plaintiff applied for disability and SSI benefits on November 11, 1985, claim-

---

5. The January 1985, report of Dr. Neifield was inconclusive; the July 1985 report of Dr. Bertangnoli concluded Ms. Nelson was in pain and unable to work; the December 1985, report of Dr. Nissenbaum found mild degenerative joint changes; the September 1986, report of Dr. Lincow noted claimant's treatment for hypertension, angina, arthritis and degenerative joint disease, but also noted essentially non-remarkable results from different tests and other examinations; the October 1986, report of Dr. Rogers found limitations in Ms. Nelson's ability to squat or stand tiptoe, and some irregularities in Ms. Nelson's spinal x-rays, with diagnosis arthritis; the questionnaire responses of Dr. Lincow dated June 1987 found Ms. Nelson unable to squat, stoop or crawl, found her capacity to stand or sit limited as described above, and concluded she was unable to work, a marked deterioration from his report of a few months earlier. The reports of the Health and Human Services physicians found Ms. Nelson's abilities limited, but not to the extent of disability.

None of the reports has conclusively linked the level of pain claimed by Ms. Nelson to any medical condition.

1. Louis W. Sullivan succeeded Otis R. Bowen as Secretary of Health and Human Services on March 1, 1989, and will be substituted for him as the defendant in this action. *See* Fed.R. Civ.P. 25(d)(1).

ing disability as of April 2, 1983 because of a heart condition, arthritis and a positive T.B. test. Her application was denied initially and upon reconsideration. A *de novo* hearing was held before an Administrative Law Judge ("ALJ"). The ALJ denied plaintiff's claim, and the decision was affirmed by the Social Security Appeals Council ("Council").

Plaintiff testified at the hearing that she was born on January 22, 1932, and has an 11th grade education. (Tr. 25). Her most recent job was as a nurse's aide, which required bathing, feeding and lifting the person for whom she was caring. (Tr. 26). She worked at this job from 1983 until 1984, but left when she went into the hospital. *Id.* From 1970 until 1980, she was employed as a housekeeper. Other employment included working as a supervisor for a firm named Poster Print (1968 to 1970), and as a belt and button maker (1954–1967).

Plaintiff complains of problems with her neck down to her lower back, and with her right leg down to her right foot. She also stated she has pain in her chest, shortness of breath, and difficulty holding things. (Tr. 26). Her chest pain started in 1984, and her leg pain began in 1976. (Tr. 29). She testified that she gets chest pains when sleeping, and when she is active doing work. The pain, she stated, will sometimes wake her, but is usually relieved two to three minutes after taking medication. (Tr. 38, 43). Plaintiff testified that she has pain in her back and neck every day, and that the pain lasts the entire day. (Tr. 29, 34). The pain started around the time she was involved in a bus accident. (Tr. 34). She also testified that she drops things with both hands, but usually has the most difficulty with her right hand. *Id.*

As a result of her pain, plaintiff testified that she cannot do any lifting. (Tr. 29). Moreover, she stated that she cannot bend to tie her shoes, or stretch, and that her daughter must help wash her hair. (Tr.

30). Furthermore, she testified that she walks with the assistance of a cane, uses a brace, can only walk two blocks at a time, and only stand twenty minutes before needing to rest. (Tr. 30, 34). On a typical day, she gets up, showers, cooks breakfast, and takes her medications. (Tr. 23). She goes to church one or two times a month if someone takes her, and is able to use public transportation. (Tr. 24). Her grandson, granddaughter and daughter-in-law help around the house and do the dusting and vacuuming. Additionally, her daughter-in-law helps her with the shopping. *Id.*

Plaintiff stated that she see Doctors Bertangnoli and Lincow once or twice a week, and also sees Doctors Gilbert and Glimmer. (Tr. 32–33). She receives therapy at Dr. Lincow's office once or twice a week. Plaintiff testified that she was hospitalized at the Germantown Hospital for fourteen days in 1984 because of pain in her chest. (Tr. 31). She was transferred to Temple University Hospital, where she received a coronary catheterization. She has not been hospitalized since that time. (Tr. 42).

The medical record consists of records from two hospitals, and various reports by treating and consulting physicians. Plaintiff was admitted to the Germantown Hospital on March 13, 1984 because of severe chest pains brought on after climbing steps. (Tr. 125). The discharge report states that the pain was suggestive of musculoskeletal chest pain. (Tr. 126). X-rays taken of her showed no evidence of significant active chest disease, and a stress test noted that she achieved a heart rate of 145, and a work load of 10 METS,[2] but the results were inconclusive because of artifacts produced by the system. (Tr. 145, 149). Nevertheless, the stress test was interpreted in the discharge report as being strongly suggestive of coronary artery disease. (Tr. 126). She was transferred to Temple University Hospital for a cardiac catheterization,[3] with diagnoses of unstable angina and hypertension.

---

**2.** Abbreviation for metabolic equivalent. *Stedman's Medical Dictionary* 862 (5th lawyer's ed. 1982).

**3.** A tubular instrument passed into the heart through a vein or artery, used mainly to diagnose and evaluate congenital, rheumatic, and coronary artery lesions. *Stedman's* at 237.

At Temple, she under went a coronary artery catheterization, which revealed that the left ventricle had good contract valve function, and that her arteries were normal. (Tr. 151–52). Plaintiff was given a trial without her cardiac medications, and had no increase in pain. She was discharged without the cardiac medications. (Tr. 152). Her primary diagnosis on discharge was "rule out coronary artery disease," and other diagnoses were hypertension, status post-abdominal hysterectomy with oophorectomy, and past reaction to intravenous dyes. (Tr. 150). The discharge summary states: "She experienced no pain while hospitalized here. Although we could not find a good etiology of her pain, it was felt that coronary artery occlusion was not present although a variant or vasospastic angina could not be ruled out." (Tr. 152). EKG studies noted an "[a]bnormal tracing showing sinus rhythm, left ventricular hypertrophy, clockwise rotation, tendency towards left axis deviation and minor ST and T wave abnormalities." (Tr. 159, 162).

Dr. Lise M. Neifeld, who filed a report dated January 13, 1985, noted that plaintiff suffers for arthritis, and that the physical examination revealed significant pain with range of motion exertion, but little limitation of movement. (Tr. 163). Dr. Neifeld also stated:

> Her chest pain has characteristics of classic angina, and she gives a history of an abnormal cardiac catheterization in the past. Her stress test, however, is normal. It is not certain that the large doses of anti-anginal medication that she is taking could not prevent evidence of ischemia on her stress test, but her endurance is inconsistent with her history of significant limitation by her chest pain.

*Id.* Dr. Neifeld noted that there were inconsistencies between objective data and subjective complaints. In a range of function report filed on December 20, 1985, Dr.

Neifeld noted pain on exertion, and limitations in range of motion. (Tr. 178–79). A stress test performed on December 30, 1985 was negative for ischemia,[4] and noted plaintiff achieved 7 METS for a total time of six minutes. (Tr. 189).

In a report to Dr. Neifeld by Dr. Harvey L. Nisenbaum, dated December 31, 1985, Dr. Nisenbaum stated that as a result of his examination of the plaintiff, the cervical spine demonstrated mild degenerative joint changes, and that the right knee was normal. (Tr. 195). Dr. Neifeld concluded, on February 12, 1985, that:

> In summary, the only evidence of a serious, potentially disabling disease is her report of a positive cardiac catheterization in 1982. I fell that a copy of this report is critical to her evaluation. Presently, no disease process which would explain her dyspnea can be identified, and her prognosis is uncertain.

(Tr. 197).

In a report dated July 10, 1985, Dr. John Bertangnoli, stated that x-rays of the plaintiff revealed mild anterior osteophyte formation in the mid cervical spine. He noted decreased range of motion of the cervical spine on right lateral rotation, 60 degrees, with pain; decreased left side bending, 20 degrees, with pain; a positive Sperling's sign; left trapezius pain, pain over the left rhomboid, and crepitus[5] over the right knee with mild adema. (Tr. 170). Dr. Bertangnoli concluded that plaintiff was unable to work, that she has difficulty functioning because of pain, and that weakness in her right wrist causes her to drop things. (Tr. 171).

Plaintiff's treating physician, Dr. Arnold Lincow also filed several reports. In a report dated September 24, 1986, he stated that he has been seeing the plaintiff since 1982, and that a CAT scan revealed minimal hypertrophic changes in her spine. (Tr. 205). A scan done on July 2, 1986 was consistent with central and right paramedian herniated nucleus pulposus. X-rays of the cervical spine were nonremarkable, but

---

4. Local anemia due to mechanical obstruction of the blood, usually arterial narrowing. *Stedman's* at 728.

5. Crackling sound of the bones. *Stedman's* at 335.

did reveal mild anterior osteophyte formation in the mid cervical spine, without fracture. (Tr. 172, 205). He noted that the results of her catheterization were normal. (Tr. 205).

Dr. Max I. Gilbert, in a letter to Dr. Lincow, stated that his examination of the plaintiff on June 1, 1985 revealed an abnormal study, findings suggestive of mild bilateral entrapment neuropathy of the median nerves at the level of the wrist—carpal tunnel syndrome—with no evidence of radiculopathy or peripheral polyneuropathy. (Tr. 164).

In a report to Dr. Lincow, from Dr. Barry Gleimer, and dated June 13, 1985, Dr. Gleimer stated that plaintiff injured her right knee as well as her neck and back in a bus accident in 1976. (Tr. 167). X-rays revealed slight narrowing and medial joint line, but otherwise, there were no significant degenerative changes. Cervical spine x-rays revealed disc spaces and intravertebral foramine to be preserved, and that there was some finding of cervical lordosis,[6] indicative of persistent paravertebral spasm. Id. He indicated that her range of motion was decreased to 80% of normal in the spine. Dr. Gleimer's impression was "[a]cute post-traumatic cervical, thoracic and lumbar sprain and strain with myofascitis ... contusion of the right knee with possible internal derangement due to torn medial meniscus ... post traumatic cephalgia with component." Id.

In a medical assessment form dated June 11, 1987, Dr. Lincow notes that plaintiff's lifting is impaired, that she can only stand or walk one to two hours out of an eight hour day, that she can only sit continuously for less than one hour, for a total of one to two hours out of an eight hour day, that she cannot crouch, stoop, climb, kneel or crawl, and that she has difficulty reaching and bending. (Tr. 224). He concluded that she cannot work because of cervical degeneration, osteophyte formation, carpel tunnel syndrome and cervical radiculopathy. (Tr. 227).

6. A curvature of the spine. *Stedman's* at 810.

Dr. Fred Rogers, who filed a report to the Pennsylvania Bureau of Disability on October 17, 1986, noted that plaintiff's chest pain is relieved by medication and rest, and that a CAT scan performed in July of 1986 did reveal alterations consistent with a central and right paramedian herniated nucleus pulposus. (Tr. 207). Furthermore, nerve conduction studies were suggestive of mild bilateral entrapment neuropathy of the median nerves at the level of the wrist. (Tr. 208). He stated lumbar region flexion and extension were limited to 60 degrees, and straight leg-raising test was positive at 45 degrees on the right, and 60 degrees on the left.

Dr. Rogers's impression was: (1) hypertensive cardiovascular disease, angina pectoris; (2) osteoarthritis; (3) disc disease; (4) anxiety and depression, reactive to illness; and (5) obesity. Id. His assessment was that plaintiff's effort and capacity were limited by hypertension, angina pectoris, low back and right knee-ankle arthralgia, that there was no end organ damage, that x-rays revealed transitional vertebra with hypertrophied right transverse process and spina bifida occulata, that there was no evidence of congestive heart failure, and that plaintiff should reduce her weight. Id.

At the hearing, vocational expert ("VE") Bruce B. Martin testified that plaintiff's work as a nurse's aide was medium work, and that skills developed in her work as a supervisor were transferrable. (Tr. 51). When asked a hypothetical question by the ALJ, describing plaintiff's limitations consistent with Dr. Neifeld's report, the VE concluded that the plaintiff could work:

Q: Consider age, fifty-five years of age, education, limited education, her past work in jobs identified, that is domestic companion, housekeeping work and supervision in the production printing company, which was semi-skilled, light to medium work, impairments' diagnosis chronic cervical and lumbar sprain. Upon examination, there were mild degenerative changes in the cervical spine. There was mild degenerative joint dis-

ease of the right knee. There is no evidence of instability of the knee. There was some mild [loss] of grip strength in her left hand. There is no evidence of coronary artery disease based on a treadmill evaluation at Temple Hospital. The treadmill was concluded after seven mets. There was no evidence of ischemia. Her lungs, this was a normal test. Pulmonary function test was within normal limits. This is Exhibit 26. There was a diagnosis of anxiety and depression, reactive to illness.... The only range of motion chart in the file based upon an examination of the musculoskeletal system in Exhibit 23, examination of the shoulders is within normal limits with respect to elevation of the shoulders is within normal limits with respect to elevation, abduction and adduction. The elbows [were] within normal limits with respect to examination of the flexion, extension, supination and pronation. Examination of the wrists, dorsiflex of the wrist on the right, 60 degrees and left, 50 degrees on a scale of 0 to 60. Palmer flexion on a scale of 0 to 70, the right, 70, the left, 50. Radial deviation on a scale of 0 to 20, the right, 20, the left, 20. Ulnar deviation on a scale of 0 to 30, the right, 30, the left, 20. Examination of the knee, flexion and extension, on a scale of 0 to 120, the right, 110, and the left, 110. Examination of the hip forward flexion on a scale of 0 to 100, right, 80 degrees, left, 90 degrees. Rotation of interior on a scale of 0 to 40, right, 20 and left 30. Rotation of exterior on a scale of 0 to 50, right, 30 and left, 40. Cervical region, lateral flexion on a scale of 0 to 40, right, 5, left 10. Flexion, from 0 to 30 degrees, 30 degrees, extension 0. Rotation of the spine, lumbar region, flexion extension on a scale of 0 to 90, 70 degrees. Lateral flexion, on a scale of 0 to 20, right and left, 20 degrees. Ankle dorsiflex, right and left, within normal limits. Assume she could sit/stand six of eight hours, lift 25 pounds frequently, walk on level ground without aid or sometimes she testified she uses a cane. On the basis of those factors and the medical and vocational factors, are there any jobs in the national economy she can perform?

A: Yes, Your Honor. But, the only—I'd like you to clarify one portion of your hypothetical. That is—using the cane—I didn't—

Q: Well, there's no medical evidence that she needs a cane.

A: There's no medical—okay.

Q: And, based on the evaluation of the musculoskeletal system, she can walk without a cane. And she is able to walk without a cane. Are there any jobs in the national economy she can perform?

A: Yes, Your Honor. These jobs—given that profile—would be various parking lot attendants, production testers—

(Tr. 52–54).

When questioned by plaintiff's attorney, however, the VE admitted that if Dr. Lincow's report—stating that plaintiff could only stand or sit for one to two hours—were credited, plaintiff could not perform work at any exertional level:

A: Again, I have to clarify one portion of very little—in one to two hours of standing and sitting capability—you know, *those functions alone would prohibit employment at any exertional level.* And, in answer to your question, my representative sample, I really can't put a handle on very little [weight]—I mean five pounds, ten pounds. If you want to be more specific, I could answer or address that.

(Tr. 55–56) (emphasis added).

The ALJ found that plaintiff was not disabled, as she retained the residual functional capacity for medium work, but was unable to perform her past relevant work. Using rule 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.11, the ALJ concluded that plaintiff was not disabled. (Tr. 13). In reaching his determination, he credited the report of Dr. Lincow, and used Dr. Lincow's opinions as to plaintiff's abilities in reaching his conclusion:

The claimant is unable to perform her past relevant residual functional capacity for medium work as defined by Regulation No. 404.1567 and 416.967 *since the*

*claimant is able to stand and walk for approximately one or two hours without interruption, able to sit for about one or two hours without interruption,* able to alternate between sitting and standing, and is able to occasionally lift and carry and is able to stoop, crouch and crawl and since the evidence also shows the claimant has only mild degenerative changes in her cervical and lumbar spine and does not suffer from any coronary artery disease. The claimant is a person of advanced age ... has a limited education ... [and] does not have any transferable skills....

(Tr. 12) (emphasis added). He concluded plaintiff was not disabled. *Id.*

The issue before the court is whether the determination of the Secretary is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971). The Secretary's findings are binding on this court as to both findings of fact and reasonable inferences drawn from these facts, if they are supported by substantial evidence. *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). Each finding of fact must be supported by substantial evidence. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

Once a claimant shows an inability to return to her former job, the burden shifts to the Secretary to show that there are jobs in the national economy that the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 [107 S.Ct. 2287, 2293–94 n. 5, 96 L.Ed.2d 119] (1987). The ALJ attempted to meet this burden by showing that plaintiff had the capacity to perform medium work. In reaching that determination, however, the ALJ accepted the findings of Dr. Lincow that she could only sit, stand or walk for a total of one to two hours per work day. Nevertheless, in reaching his conclusion, the ALJ ignored the statement by the VE that if she was limited in the way described by Dr. Lincow, she could not meet the exertional requirements of any job. Therefore, the Secretary failed to meet its burden, since the determination that plaintiff could perform medium work was not supported by substantial evidence, in that it does not explain how the plaintiff could perform medium work in light of the testimony of the VE.

Furthermore, in his hypothetical to the VE, the ALJ assumed that plaintiff could lift 25 pounds.[7] While the ALJ purports to rely on the report of Dr. Neifeld as to plaintiff's limitations, nowhere in Dr. Neifeld's report does it say that plaintiff could lift 25 pounds. Rather, the assumption in the hypothetical seems wholly conjectural. The only evidence in the record indicating that plaintiff could lift 25 pounds frequently, is found in Functional Capacity Reports filled out by two Social Security Administration physicians. (Tr. 98, 101). The reports, however, give no indication as to how these physicians determined that plaintiff could lift 25 pounds, and it is unclear whether they even examined her. Therefore, they are of little weight. *See Dorf v. Bowen,* 794 F.2d 896, 901 (3d Cir.1986). Moreover, it is unclear whether the ALJ himself considered these reports, since they are not even mentioned in his opinion. Inasmuch as the VE's opinion that plaintiff could work as a parking lot attendant or cashier was based upon an inaccurate hypothetical question, there is not substantial evidence to support the ALJ's conclusion that plaintiff could perform other work. *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987).

Where there is adequate evidence in the record to find that plaintiff is disabled, and where a remand would merely result it the delay of benefits, the court can reverse the Secretary's decision without a remand. *Gilliland v. Heckler,* 786 F.2d 178, 184 (3d Cir.1986). Here, the VE testified that if plaintiff could only sit, stand or walk for a maximum of two hours out of an eight

---

**7.** The regulations define medium work as: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1667(c) (1988).

hour day, she could not meet the exertional requirements of any level of work. The ALJ, however, erroneously found, despite the opinion of the VE, that plaintiff could do medium work, even though he accepted the limitations as set forth in Dr. Lincow's report. Therefore, since the record shows that if plaintiff was limited as described by Dr. Lincow, and since the ALJ accepted Dr. Lincow's findings, he could only conclude that plaintiff was disabled. Accordingly, I recommend that plaintiff's motion for summary judgment be granted, and that the case be remanded to the Secretary for the Award and calculation of benefits.

## RECOMMENDATION

AND NOW, this 4th day of December, 1989, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment be GRANTED; that the Defendant's motion be DENIED; and that the case be REMANDED to the Secretary for the award and calculation of benefits.