**Valerie JOHNSON**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

**Civ. A. No. 87–4163.**

United States District Court,
E.D. Pennsylvania.

Aug. 3, 1988.

---

Stephen T. Shaffer, Philadelphia, Pa., for plaintiff.

Linda L. Shafer, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Plaintiff, Valerie Johnson, initiated this action for review of the decision of the Secretary of Health and Human Services ("Secretary") denying the former's claims for a period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* On October 14, 1985, plaintiff filed applications for a period of

disability, disability insurance benefits and supplemental security income, claiming that she had been disabled since April 24, 1985. The applications were initially denied by the Secretary on January 2, 1986, and upon reconsideration on February 19, 1986 and March 31, 1986. Thereafter, on August 4, 1986, a hearing was conducted by an Administrative Law Judge ("ALJ"). Plaintiff appeared in person and with counsel. In a decision dated November 24, 1986, the ALJ found the plaintiff to be not disabled and, accordingly, found that she is not entitled to a period of disability, disability insurance benefits or supplemental security income. The ALJ's ruling was based on his determination that the plaintiff retains the residual functional capacity to perform a wide range of sedentary work activity which exists in significant numbers in the national economy. On June 10, 1987, the Appeals Council denied plaintiff's request for review; and as a result, the ALJ's ruling became the final decision of the Secretary. This appeal was filed by the plaintiff on July 24, 1987.

## I. FACTS

The plaintiff claims disability based on her inability to perform substantial gainful activity due to injuries to her left knee and lower back, depression, and resulting symptoms. Prior to her alleged onset of disability in April of 1985, the plaintiff had been primarily employed as a packer/sorter in a garment manufacturing plant; and she had also worked as a barmaid. Both of these jobs require long periods of standing, walking, reaching and bending. The plaintiff is currently a 39 year old single, female with an eleventh grade education.

On October 31, 1983, plaintiff injured her left knee when she slipped and fell on the steps of a subway station. Plaintiff was treated by Dr. Seymour Kaufman, an orthopedic surgeon, who diagnosed substantial knee damage. As a result, Dr. Kaufman performed surgery on the plaintiff's left knee during a four day hospitalization (December 7–11, 1983). After undergoing physical therapy, plaintiff returned to work as a garment sorter on a part-time basis;

but she continued to experience persistent left knee pain.

On June 18, 1985, plaintiff started seeing Dr. William Simon, another orthopedic surgeon. Dr. Simon's diagnosis included internal derangement of the left knee and possible nerve root irritation of the lumbar spine. Accordingly, plaintiff was hospitalized on June 30, 1985, at which point Dr. Simon performed surgery on her left knee. Thereafter, Dr. Simon continued to treat the plaintiff on a regular basis. On January 9, 1986, Dr. Simon stated that plaintiff had been disabled for over two years, was still disabled, and would need to embark on a physical rehabilitation program for at least a year before he could determine whether her left knee would require further surgery. Thereafter, in a final report dated March 21, 1986, Dr. Simon concluded that plaintiff has a discogenic injury at L5–S1 of the lower back and remains permanently disabled from returning to her former job.

On December 19, 1985, Dr. M. Jaffari performed an orthopedic evaluation on the plaintiff, observing a noticeable limp and reduced range of motion in the left knee.

The plaintiff apparently had difficulty in dealing with her physical impairments. As a result, plaintiff underwent a psychological evaluation, on April 28, 1986, at the Mental Health Associates, Inc. A course of treatment was begun immediately under the supervision of Dr. Brian Raditz, a clinical psychologist. Dr. Raditz's initial evaluation reflected that plaintiff had feelings of confusion, depression, anxiety and helplessness and that she displayed suicidal ideations. Plaintiff was given a full scale intelligence test based on the Shipley–Hartford I.Q. Scale, on which she received a verbal score of 69, an abstraction score of 70 and a full score of 67. These results placed plaintiff within the mild mental retardation range of intellectual functioning. The plaintiff's vocational skills were classified as "rather limited" and her response to the pressures of reality was marked by "withdrawal … and fantasies." Plaintiff was also reported to relate poorly to others, to be obsessed by her physical problems, and

to be extremely uncomfortable in unfamiliar situations. Dr. Raditz diagnosed an adjustment disorder with depression, noting that a "major depressive episode" with suicidal actions could not be ruled out. Accordingly, plaintiff underwent a course of treatment which included psychotherapy and systematic desensitization/relaxation training. When the plaintiff's mental condition did not improve, Dr. Raditz recommended intensive follow-up psychotherapy for persisting symptomatology.

At the administrative hearing on August 4, 1986, plaintiff testified with regard to her impairments. She stated that she still suffers from swelling in her foot and a tingling sensation in her left knee, forcing her to use a cane for ambulation. Plaintiff also testified that she still experiences a tremendous amount of pain in her lower back and extremities, which limits the amount of time that she can sit to ten minutes, and takes Motrin four times per day to help alleviate the pain. Plaintiff related that her impairments make it very difficult for her to stand up and climb stairs. Moreover, she claimed to need assistance in bathing and putting on her clothes. Plaintiff also testified that she cannot perform household chores, prepare meals or shop for groceries. Plaintiff stated that she has no social life and is forced to spend at least three days per week in bed. Plaintiff also said that her lack of money has forced her to give up the therapy she was receiving for her back and lower extremities. With regard to her psychological problems, plaintiff claimed to be very depressed about her inability to do anything for herself.

Near the close of the hearing, counsel for plaintiff requested the assistance of a vocational expert in order to analyze the plaintiff's non-exertional impairment. The ALJ, however, neither granted nor denied counsel's request. Instead, the ALJ stated that he would keep the request in mind and seek vocational input later if it was necessary to reach a conclusion in the case. The ALJ also stated that he was going to leave the case record open so that he could make further evaluations and would apprise plaintiff's counsel of any future developments regarding the case.

As it turned out, the ALJ never sought the assistance of a vocational expert; but he did obtain and rely upon the report of another psychologist. At the Secretary's request, on September 29, 1986, some 56 days after the administrative hearing, a psychological evaluation was performed upon the plaintiff by Martin Gelman, Ph.D. In making his final decision, the ALJ relied heavily upon Dr. Gelman's report, yet he never forwarded a copy of the report to plaintiff's counsel for comment, as had been promised. In fact, counsel for the plaintiff never had an opportunity to review Dr. Gelman's report until the Appeals Council provided a copy upon counsel's demand.

Dr. Gelman's report discloses that plaintiff took the Wechsler Adult Intelligence Scale–Revised test. The results show that plaintiff's full scale I.Q. was 74, verbal I.Q. was 72 and performance I.Q. was 77, consistent with borderline mental retardation. Dr. Gelman also administered a Wide Range Achievement Test, which suggested that plaintiff could read at a sixth grade level, spell at almost a fifth grade level, and perform arithmetic tasks at a third grade level. In addition, a Bender Gestalt Test was given, and plaintiff's performance reflected the presence of a possible Central Nervous System impairment. According to Dr. Gelman, plaintiff appeared to be "suffering from an Adjustment Disorder with Mixed Emotional Features;" however, she still seemed "capable of handling her benefits in her own behalf."

On November 24, 1986, after considering all of the evidence, including Dr. Gelman's report, the ALJ rendered his decision. First, the ALJ found that since April 24, 1985, the plaintiff has met the disability insured status requirements of the Act and has not engaged in any substantial gainful activity. Based on his reading of the medical evidence, the ALJ also concluded that the plaintiff has internal derangement of the left knee, nerve root irritation of the lumbar spine, adjustment disorder with depressed mood, and borderline intellectual

functioning. These factors notwithstanding, the ALJ determined that the plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation 4 of the Social Security Administration Regulations ("Regulations"). 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, the ALJ found the plaintiff to be not disabled under the Appendix 1 analysis.

In an important evidentiary decision, the ALJ concluded that there is substantial evidence that contradicts Dr. Simon's determination that the plaintiff is disabled. In addition, the ALJ found the plaintiff's claims of disabling pain and total disability to be not credible when weighed against the evidence of the record. In finding the plaintiff's claims not credible, the ALJ considered: the plaintiff's minimal intake of pain medication; the lack of current treatment for physical or emotional pain; the normal range of motion of her spine and extremeties; the normal x-ray examinations of her left knee and spine; and her neurological intactness.

Looking to the plaintiff's ability to work, the ALJ found that her physical impairments preclude her from performing work that involves prolonged standing or walking, repetitive bending or stooping, and heavy lifting. The ALJ, however, determined that the plaintiff is able to understand and carry out instructions, exercise simple judgment, interact with others, and deal with routine changes in a work setting. In consideration of these factors, the ALJ concluded that plaintiff is unable to perform her past relevant work as a barmaid or as a packer/sorter due to the exertional demands of such work.

The ALJ next sought to determine the plaintiff's residual functional capacity. From an exertional standpoint alone, the ALJ concluded that the plaintiff retains the residual functional capacity to perform a wide range of sedentary work as defined by the Regulations. Moreover, the ALJ found that the plaintiff's non-exertional impairment would not diminish her capacity for unskilled sedentary work. The ALJ also determined that the plaintiff does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work. 20 C.F.R. §§ 404.1568 and 416.968.

Other vocational factors taken into account included plaintiff's limited education (20 C.F.R. §§ 404.1564 and 416.964) and her age (38). Based on the plaintiff's residual functional capacity for a wide range of sedentary work, and her age, education, and past work experience, the ALJ concluded that there are other jobs which the plaintiff can perform and that such jobs exist in significant numbers in the national economy. Thus, under § 404.1569 of Regulation 4 and § 416.969 of Regulation 16, and Rule 201.24, Table No. 1, Appendix 2, Subpart P, Regulation 4, the ALJ found the plaintiff to be not disabled.

Finally, the ALJ concluded that the plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of his decision. 20 C.F.R. § 404.1520(f) and § 416.920(f). Therefore, the ALJ ruled that the plaintiff is not entitled to a period of disability, disability insurance benefits, or supplemental security income.

## II. DISCUSSION

■ Before reviewing the appropriateness of the ALJ's conclusions, the procedural decision to rely on Dr. Gelman's post-hearing report must be addressed. A claimant whose application for disability benefits is denied is entitled to "reasonable notice and opportunity for a hearing with respect to such a decision." *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir.1983) (citing 42 U.S.C. § 405(b)(1) (Supp. V 1981)). Such a hearing is subject to procedural due process considerations. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971). Accordingly, an ALJ's use of a post-hearing medical report constitutes a denial of due process where the claimant is not given the opportunity to subpoena and cross-examine the

physician or to rebut the report.[1] *Allison,* 711 F.2d at 147; *Gullo v. Califano,* 609 F.2d 649, 650 (2d Cir.1979). Furthermore, the reliance upon such a report exceeds the Secretary's statutory authority, as he is clearly mandated by statute to determine a claimant's disability "on the basis of evidence adduced at the hearing." *Allison,* 711 F.2d at 147 (citing 42 U.S.C. § 405(b)(1)). Thus, an ALJ's utilization of such a post-hearing report serves to invalidate a decision denying a claimant's benefits. *Allison,* 711 F.2d at 147; *Gullo,* 609 F.2d at 650.

█ In the case of the plaintiff, Valerie Johnson, the ALJ clearly relied upon Dr. Gelman's post-hearing report in deciding to deny the plaintiff's request for benefits. Neither the plaintiff nor her counsel were given the opportunity to see the report until receiving a copy from the Appeals Council. Obviously, it was impossible for the plaintiff to either cross-examine Dr. Gelman or rebut his report prior to the ALJ's decision on November 24, 1986, resulting in a denial of the plaintiff's right to due process. Moreover, the ALJ exceeded the Secretary's statutory authority by making a determination on the basis of evidence not adduced at the hearing. Accordingly, the judgment of the Secretary is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Since there must be a rehearing, I will address some further aspects of the ALJ's ruling in order to provide guidance to the Secretary on remand.

█ The standard of review focuses on whether there is substantial evidence in the record to support the Secretary's decision. 42 U.S.C. § 405(g); *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427. More than a scintilla of evidence is required, but the evidence need

not reach the level of a preponderance standard. *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir.1988). Furthermore, a single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1963). Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes mere conclusion rather than evidence. *Id.* at 114.

Under the Social Security Act, a claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505. In pressing her claim, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). Where the claimant establishes the existence of a medically determinable impairment that precludes her from returning to her past relevant work, the burden shifts to the Secretary to "demonstrate that given the claimant's age, education, and work experience, the claimant is capable of performing substantial gainful work activity in the national economy." *Stunkard,* at 59.

█ Accordingly, in determining whether the plaintiff is disabled, the major issue is whether she is capable of performing substantial gainful work activity in the national economy. The burden of proof with regard to this issue effectively shifted to the Secretary as a result of the ALJ's finding that the plaintiff cannot perform her past relevant work. The ALJ then went on to find that the plaintiff retains the residual functional capacity to perform sedentary work activity and is, therefore, not disabled. The ALJ's conclusion, how-

---

1. In cases regarding social security benefits, the Third Circuit requires that the claimants be afforded an opportunity to effectively confront and cross-examine adverse witnesses. *Mattern v. Mathews,* 582 F.2d 248, 259 (3d Cir.1978).

ever, it arguably not supported by substantial evidence.

Where the claimant suffers from only exertional impairments, the Secretary's burden may be met through reliance upon the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"). However, where additional non-exertional impairments exist, for example, pain or lack of fine motor capacity, the grids may not be applied mechanically. *Green v. Schweiker,* 749 F.2d 1066, 1071–72 (3rd Cir.1984). Instead, the Secretary must rely upon some other supporting evidence in the record, such as testimony from a vocational expert, to demonstrate that the claimant can perform work available in the national economy. *Washington v. Heckler,* 756 F.2d 959, 967 (3d Cir.1985). Indeed, a vocational expert is needed when a claimant suffers from non-exertional impairments, such as pain, instead of or in addition to exertional impairments. *Santise v. Schweiker,* 676 F.2d 925, 934–935 (3d Cir.1982) (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)). In the case of Valerie Johnson, who clearly has non-exertional impairments, the ALJ failed to grant the plaintiff's request to have a vocational expert testify. Therefore, without any vocational expertise to rely upon, the ALJ's decision that the plaintiff could perform a wide range of sedentary work is not based on substantial evidence.

Moreover, in the absence of evidence that jobs exist in the national economy in significant numbers that fulfill the plaintiff's environmental requirements, an ALJ's decision that such jobs exist cannot stand. *Gomez v. Heckler,* 594 F.Supp. 692, 694 (E.D.Pa.1984). There is no evidence in this case that indicates either the specific types of jobs or the numbers of jobs that are available to the plaintiff. Since the ALJ did not demonstrate that there are jobs available to the plaintiff in the national economy, his conclusion that the plaintiff is capable of performing substantial gainful work activity is not supported by substantial evidence.

The Secretary must examine all of the evidence contained in the record.

*Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). Should the Secretary disregard any of the evidence in the record, he must set forth his reasons for doing so. *Id.* Where the Secretary fails to consider all the relevant evidence or rejects such evidence without explanation, a Court may remand the case and require the Secretary to expressly evaluate such evidence. *Id.* These evidentiary standards pertain to the ALJ's questionable treatment of the plaintiff's testimony and various medical opinions.

The standard for evaluating a plaintiff's subjective complaints requires:

> ...(1) that subjective complaints of pain be seriously considered even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Green,* 749 F.2d at 1068. At the hearing, the plaintiff complained of pain in her left foot, left knee and lower back, as well as feelings of depression. She also detailed the ways in which her impairments serve to restrict her daily activities. The plaintiff's subjective complaints are supported by medical evidence. In finding the plaintiff to be disabled, Dr. Simon diagnosed internal derangement of the left knee and a discogenic injury of the lower back. Moreover, Dr. Jaffari found the plaintiff to have a noticeable limp and reduced range of motion in the left knee. Regarding the plaintiff's psychological problems, reports by both Dr. Raditz and Dr. Gelman confirm her claims of depression. Accordingly, the plaintiff's complaints are supported by medical evidence and should, therefore, be given great weight.

The ALJ's reasons for disregarding the plaintiff's testimony do not constitute "contrary medical evidence" to the extent that

such testimony should receive no consideration. For instance, the fact that the ALJ defined the plaintiff's prescribed dosage of pain medication as a "minimal amount" does not serve to discredit the plaintiff's claims. The ALJ also considered that the plaintiff no longer receives regular treatment for either her physical or emotional pain; but he failed to mention that she was forced to cease such treatment due to her inability to pay for it. Furthermore, as the various medical reports indicate, the plaintiff's full range of motion, neurological intactness and normal x-rays do not necessarily mean that she is not experiencing pain. Accordingly, since the ALJ failed to give the plaintiff's testimony any weight and failed to specify any valid reasons for doing so, his final decision is not supported by substantial evidence.

▇▇▇▇ The ALJ also failed to properly consider all of the medical evidence in determining that the plaintiff retains the residual functional capacity to perform sedentary work activity. An ALJ may not make medical determination of his own based on observations at the hearing but must decide the matter on evidence of record. *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir.1986). Moreover, an ALJ is not free to set his own medical expertise against that of physicians who present competent medical evidence. *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983). These legal standards notwithstanding, the ALJ in this case did indeed make medical determinations of his own that ran contrary to the medical evidence.[2] Dr. Raditz's report includes I.Q. test scores and other evidence that indicates that the plaintiff is mildly mentally retarded; yet after reading this report, the ALJ still made the aforementioned statement.

▇▇▇ The claimant's treating physician's opinion is entitled to substantial weight, and an ALJ may not simply ignore the opinion of a competent, informed, treating

physician. *Gilliland*, 786 F.2d at 183. A finding of residual functional capacity for work which conflicts with such an opinion and is made without analytical comment or record reference to contradictory evidence is not supported by substantial evidence. *Gilliland*, 786 F.2d at 183 (citing *Rossi v. Califano*, 602 F.2d 55, 57–58 (3d Cir.1979)). Based upon the plaintiff's I.Q. test results generated by Dr. Raditz and her additional physical impairments, she could be easily classified as disabled under § 12.05(C) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ, however, chose to disregard the I.Q. scores submitted by Dr. Raditz, the plaintiff's treating psychologist. Instead, the ALJ relied on the I.Q. scores found in Dr. Gelman's post-hearing report. Accordingly, the ALJ came to the conclusion that the plaintiff's "capacity for the full range of sedentary work has not been significantly compromised by her non-exertional limitations." (R. at 18). Such a finding is in obvious conflict with the opinion offered by the plaintiff's treating psychologist, Dr. Raditz. Furthermore, the only evidence to support such a finding is the report of Dr. Gelman, which was improperly reviewed by the ALJ.

The ALJ also paid little attention to the opinion of Dr. Simon, the plaintiff's treating orthopedist. Dr. Simon reported that the plaintiff "remains totally disabled at the present time and her prognosis for returning to work with her knee injury and her lumbar nerve root irritation is extremely poor." (R. at 126). Dr. Simon also stated that the plaintiff would need to be on a physical rehabilitation program for at least a year before deciding whether she needs further surgery on her left knee. Dr. Jaffari, however, after seeing the plaintiff only once, submitted a rather general report which categorized the plaintiff's physical impairments as somewhat less severe. Dr. Jaffari made no comments regarding the plaintiff's ability to work,

---

2. I have had the opportunity to meet and talk with Miss Johnson today. I've had an opportunity to observe her. I've also looked at the psychological report. Now, the psychological report concludes she's mentally retarded. I'm not a psychologist and I don't pretend to know

the in's and out's of—of their work, but she certainly doesn't come across to me as being mentally retarded ... I find it very, very difficult to appreciate that she today is mentally retarded. (R. at 62).

nevertheless, the ALJ concluded that she retains the residual functional capacity from an exertional standpoint to perform the full range of sedentary work. There does not seem to be any evidence to support this conclusion.

## ORDER

AND NOW, this 3rd day of AUGUST, 1988, upon consideration of the parties' cross-motions for summary judgment, and after careful review of the record, it is hereby

ORDERED that

1) The defendant's motion for summary judgment is DENIED.

2) The plaintiff's motion for summary judgment is DENIED.

3) The decision of the Secretary is REVERSED, and the case REMANDED to the Secretary for reconsideration of plaintiff's requests for a period of disability, disability insurance benefits and supplemental security income in light of the Memorandum of Decision filed herewith.