Robert L. GILLILAND, Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services.

No. 85–3196.

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1986.

Decided March 19, 1986.

Regional Atty., Michael Leonard, Asst. Regional Atty. Deborah Fitzgerald (argued), Vincent J. Quatrini, Jr. (argued), Greensburg, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., James C. Newman, Acting Regional Atty., William Reinhart, Supervisory Asst. Regional Atty., Michael Leonard, Asst. Regional Atty., Deborah Fitzgerald (argued), Philadelphia, Pa., for appellee.

Before GARTH and STAPLETON, Circuit Judges, and BISSELL, District Judge *

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

In this appeal, we review the Secretary's decision that Appellant, Robert L. Gilliland, is not entitled to disability payments. The district court granted the Secretary's motion for summary judgment. Appellate jurisdiction exists pursuant to 28 U.S.C. § 1291. We reverse.

### I.

Robert L. Gilliland ("Claimant"), filed an application for disability benefits in October, 1982, alleging disability based on both mental and physical grounds commencing as of March 17, 1982.[1] His application was denied initially and again upon reconsideration. After a hearing, held on May 31, 1983, an administrative law judge ("ALJ") determined that Claimant possessed the ability to engage in sedentary work and thus was not disabled. The Appeals Council denied review and Claimant then sought judicial relief in the district court. The district court affirmed the Secretary's evaluation. The Claimant's appeal challenges that determination as it relates to his mental condition.

### II.

Claimant was 59 years old at the time of the hearing before the ALJ. He had a college degree in business administration and one year of graduate study in finance. He had last been employed as an executive vice president of a bank which he served for 35 years.

Sometime in 1980, Claimant and those around him noticed that he was having difficulty with his memory and in performing calculations and other work-related procedures. His family physician referred him to a neurologist. On March 17, 1982, he was placed on a medical leave of absence from the bank because of his memory deficit and never thereafter returned to this employment. Claimant's physicians agree that he is suffering from a dementing and progressive illness, most likely Alzheimer's disease.

The relevant medical record begins in 1981, when Claimant, because of concerns about memory loss, was seen by a neurologist, David D. Wright, M.D. Dr. Wright's report noted that Claimant had difficulty naming recent Presidents (omitting Eisenhower, Kennedy, Ford and Carter) and thought the date was April 20, 1981, when in fact it was May 1, 1981. Dr. Wright recommended further observation and tentatively diagnosed Claimant's condition as "a very mild depression or very early gray matter degeneration such as Alzheimer's Disease."

Claimant underwent a more comprehensive examination on May 20 and 21, 1982 by Terence McGillen, B.S., at the University of Pittsburgh, Western Psychiatric Institute and Clinic. The testing revealed that, although Claimant was currently functioning within an average range of intelligence,

---

* Honorable John W. Bissell, United States District Judge for the District of New Jersey, sitting by designation.

1. To be entitled to disability benefits before the age of 65, a Claimant must:
   —have enough social security earnings to be "insured for disability" as defined by § 404.130;
   —file an application

   —have a disability as defined in § 404.1501 (or have had a disability within the twelve months immediately preceding the date of application).
   —have been disabled for five consecutive months
   20 C.F.R. § 404.315.

his condition was consistent with the onset of dementia. The examiners concluded that the Claimant was unable to return to his prior employment and suggested that the progressive nature of the disorder rendered further pursuance of alternate vocational activities as inadvisable. They recommended supportive psychotherapy or rehabilitation counseling as well as avocational or recreational counseling.

Dr. Paul S. Applebaum, M.D., a psychiatrist, examined Claimant on May 11, 1982, and evaluated the Claimant's condition based on both his examination of Claimant and the University of Pittsburgh testing. Among other observations, Dr. Applebaum reported that Claimant was unable to name any presidents other than Reagan, Carter, Nixon and Johnson. He knew he had been married since 1947, but did not know how long ago that was. In the neuropsychological testing, the patient was found to demonstrate "average intelligence, but to display profound deficits in memory, spacial reasoning, abstract thinking and generalizing ability, logical planning and sequencing ability, and in stereognostic and kinesthetic abilities [the ability to perceive position, movement, tension, etc. of parts of one's body]."

Dr. Applebaum concluded that the Claimant was suffering from the initial states of a dementing illness, "most likely Alzheimer's Disease," and that the Claimant's condition could continue to deteriorate. Applebaum stated that Claimant would be unable to return to his job as a bank vice president, and wrote that "if he is able to obtain substitute employment, it will inevitably be at a substantially lower level." In an interview with the Claimant held on June 8, 1982, Applebaum discussed "the possibility of his obtaining alternate employment, which seems to me to be possible, but almost certainly at a level well below that to which he is accustomed."

In December, 1982, Dr. Wright reported to the Social Security office concerning his most recent examination of Claimant, which had taken place on September 7, 1982.

On the last neurological examination on September 7, 1982, he was oriented but vague on current events. He could name recent Presidents but not in order. He had difficulty with simple calculations such as 28 plus 17 and 21 minus 7 although he did come up with the right answer after a second try. More complicated subtractions were performed on paper but there was some perseverations [The persistent continuation of a line of thought or activity once it is underway; inappropriate repetition] with more figures being produced than were asked for ... [E]ven though his outward appearance appears normal[,] [b]ased on the current knowledge available, I do not expect that this patient will become employable in the near future.

A residual functioning capacity assessment was performed by V. Rama Kumar, M.D., a family practitioner, on November 22, 1982. Dr. Kumar found that Claimant had "profound deficits in memory, spatial reasoning, and abtract thinking, suggesting significant organic involvement." He further noted "[m]arked impairment of attention, concentration, memory of past performance, [and] visual analysis...." Dr. Wright examined Claimant again on June 3, 1983. He reported on that examination to the ALJ as follows:

Since I saw Mr. Gilliland last September, he has apparently lost further ground intellectually. He is quite aware of his incapacity and unemployable state. It has been our opinion that he has a progressive deterioration in brain function consistent with a diagnosis of Alzheimer's Disease. (This is a clinical diagnosis and can only be confirmed at autopsy).... A mental status examination showed that he was oriented to the date and able to give his address. He was unable to name the Governor of Pennsylvania and took some time to come up with the name of the Mayor of Pittsburgh. The only Presidents he could name were Reagan, Truman, and Eisenhower. With extensive hints, the

only other President he could name was Johnson. ... He was able to do simple additions of one digit such as 7 + 7 but could not calulate more complicated addition such as 28 + 13. His language testing was normal. On testing of recall, he could remember two out of three objects at the end of three minutes.... When I asked him to take off his socks and shoes, he only took off his shoes. On another simple maneuver, he became perplexed.

... [I]n June, 1982, when Mr. Gilliland was functioning at a better level than he is now, we had him evaluated with neurological testing at Western Psychiatric Institute. At that time he was found to have "profound deficits" in intellectual functioning of multiple types as is mentioned in the report by Dr. Appelbaum. Therefore, this was not in any sense a borderline case. It has been my experience that in Alzheimer's Disease, it would be extremely unusual for a patient to move successfully from one type of employment to another such as from more skilled to less skilled keeping pace with the deterioration in intellect. That Mr. Gilliland expressed some desire to attempt jobs which were less intellectually demanding was unusual; it showed his desperate need to remain a useful citizen and family man in the face of a bleak future. In other words, it shows that he does not in any way have the personality of a malingerer. From an intellectual standpoint, this attempt at continued employment probably shows his lack of insight and judgment into his severe cognitive impairment. As one might expect, he failed. Because of the severe limitations which have been well documented by both neuropsychological and neurological testing, careful clinical follow-up, thorough testing to rule out reversible medical disorders, I do not believe Mr. Gilliland can carry out even the most elementary, simple, repetitive tasks of sedentary unskilled employment. I expect his condition will gradually worsen in the future.

At the hearing before the ALJ, Claimant recounted the employment efforts mentioned by Dr. Wright and described his memory problems. In December 1982, Claimant had attended a training course offered by Sears Roebuck and Company on cash registers and sales procedures in the hope of qualifying as a part-time cashier. His participation in the course lasted only two days, however, because he was unable to complete the sequences necessary to run the cash registers.

On another occasion he had attempted to help a friend with some interior housepainting. He had "some difficulty," however, being unable to recall that latex rather than oil-based paint was required, and improperly using the latter.

Claimant was living at home with his wife and was able to take care of his personal needs without assistance. However, because he could no longer reconcile his bank statement, his wife had taken care of all the finances for the nine or ten months preceding the hearing.

Claimant testified that he still drove an automobile and accompanied his wife when she went shopping. He had trouble with the change, but if he watched and counted carefully, he could count it. On one occasion he had an "embarrassing" incident at a store where he "put the wrong money on the check and the wrong date."

Claimant testified that he had seen combat with the 14th Air Corps stationed in China, Burma, and India during the Second World War, but was unable to recall his Military Occupational Specialty. Claimant testified to several other examples of memory loss, particularly of recent memory loss.

When asked if he would be able to perform simple clerical procedures, Claimant answered that he did not think he would be able to do so because he would be likely to forget some of the procedures.

Finally, Claimant submitted a letter to the ALJ from a friend and former colleague, A. Duff Busche, an executive vice president at Claimant's former employer.

Busche wrote that Claimant became confused quite easily and opined that he would not be able to perform clerical duties in a work setting.

### III.

In a disability benefits proceeding, the Claimant has the initial burden of establishing an inability to engage in substantial gainful activity by reason of a medically determinable impairment. 42 U.S.C. §§ 416(i), 423(d)(1)(A). A Claimant satisfies this burden when he shows, using medical evidence, that he is unable to return to his previous employment. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983); *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.1980). If a Claimant has an impairment that meets or exceeds "the listings," 20 C.R.F., Subpart P. Appendix 1, the Secretary will find the Claimant disabled without consideration of any vocational factors. 20 C.F.R. § 404.1520(d).

The appropriate listing under Appendix 1 relevant to Claimant's condition is Section 12.02, entitled "Chronic Brain Syndrome." Under this section a Claimant will be found disabled, without additional proof, where there is

[A] ... Demonstrated deterioration in intellectual functioning, manifested by persistence of one or more of the following clinical signs:

1. Marked Memory defect for recent events; or

2. Impoverished, slowed, perseverative thinking, with confusion or disorientation; or

3. Labile, shallow, or coarse affect; [And]

[B] Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.[2]

■ Even if a Claimant's disability does not meet the appropriate listing, he or she is entitled to benefits unless the Secretary can point to substantial record evidence indicating that the Claimant, given his or her residual capacity, age, and skills, is still able to perform specific jobs that exist in the national economy. *Podedworny v. Harris*, 745 F.2d 210, 216 (3d Cir.1984).

The ALJ found that although Claimant was suffering from Alzheimer's Disease, his condition did not meet or equal the relevant listing. The ALJ therefore considered vocational factors and concluded, without seeking the opinion of a vocational expert, that Claimant retained the ability to engage in substantial gainful activity. This conclusion was based on a finding that the "preponderance of the evidence of record including observation of the Claimant at the hearing and Claimant's coherent intelligent testimony ..." indicated that Claimant's illness did not preclude his engaging in sedentary employment. According to the ALJ, "The indication is that this [Claimant's former] job left Claimant with readily transferable skills to a wide variety of clerical type work similar to the work that he was familiar with in his job as an executive vice president of a bank ... which would not be complicated in nature."

---

2. We note that the Secretary recently revised the criteria for the listing of mental disorders. 50 C.F.R. 35038 (August 28, 1985). Although we do not apply the new regulations retroactively, we need *not* ignore them. Thus, in assessing Claimant's case, we are cognizant that the Secretary has eliminated the "deterioration of personal habits" requirement from the listing because "[t]his characteristic is not always apparent in persons with severe organic mental disorders." 50 C.F.R. at 35039.

The revised listing reads, as to "prong B": Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from the situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

The district court affirmed because, although it found that the Claimant had suffered a "demonstrated deterioration in intellectual functioning," there was no proof of "marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); Appendix 1, § 12.02. After concluding that the requirements of the listing had not been met, the court agreed with the ALJ that there was substantial evidence to support the finding that Claimant was able to engage in sedentary employment.

### IV.

The Secretary's decision to deny benefits must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); *see Richarson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This is less than a preponderance, but must be such as a reasonable person would accept as adequate to support a conclusion. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). As we have previously stated:

> Our decisions make clear that determination *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by counterveiling evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians).

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983) (citations omitted).

Upon reviewing the record below, we find that the Secretary's decision is not supported by substantial evidence. As we read the record, it is unrebutted that Claimant's condition has left him unable to obtain gainful employment.

We assume without deciding that the record does not establish that Claimant's memory deficit meets Section 12.02 of the "listings." We conclude, however, that the finding regarding Claimant's ability to perform clerical functions is not supported by substantial record evidence. Indeed, uncontradicted record evidence affirmatively demonstrates that Claimant was unable to perform substantial gainful activity as of September of 1982.

The ALJ found that the Claimant was "unable to perform his past relevant work as executive vice president of a bank," thus acknowledging that Claimant had established a *prima facie* case of disability. He concluded, however, that the Secretary had carried her burden by demonstrating that the "Claimant retains the residual functional capacity to perform a wide variety of clerical type work similar to the work that he was familiar with in his job as an executive vice president of a bank."

The ALJ reached this conclusion without addressing Dr. Wright's opinion that, as of September, 1982, Claimant was not employable and unlikely to become so, or Dr. Wright's report of June, 1983, that Claimant was unable to "carry out even the most elementary, simple, repetitive tasks of sedentary unskilled employment." Moreover, this conclusion was reached without any expert evidence on the extent to which memory is required for the performance of the kinds of clerical work to which Claimant was exposed in the bank.

We have previously held that an ALJ may not simply ignore the opinion of a competent, informed, treating physician. *See Podedworny*, 745 F.2d at 217–18; *Kent*, 710 F.2d at 115. And a finding of residual capacity for work which conflicts with such an opinion and is made without analytical comment or record reference to contradictory evidence is not supported by substantial evidence. *See Rossi v. Califano*, 602 F.2d 55, 57–58 (3d Cir.1979). Moreover, we have also held that where substantial non-exertional impairments like memory loss are concerned, the Secretary cannot rebut a *prima facie* case without competent evidence that the impairment is consistent with the requirements of specific jobs in the national economy. *See Green v.*

*Schweiker,* 749 F.2d 1066, 1071–72 (3d Cir. 1984); *see also Grant v. Schweiker,* 699 F.2d 189 (4th Cir.1983); 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a), (d)–(e). It follows that, in this case, the Secretary's finding of residual capacity for clerical work cannot stand.

Before this Court, the Secretary seeks, *post hoc,* to explain the ALJ's failure to accept Dr. Wright's views by reference to Dr. Appelbaum's report. It is true that this report, based on a May 1982 examination, mentions a possibility that the Claimant might be able to engage in some alternative employment, albeit "at a level well below that to which he is accustomed." We find nothing inconsistent, however, between Dr. Appelbaum's opinion in May of 1982 and Dr. Wright's opinions of September 1982 and June 1983.

The Secretary fails to consider that Claimant's condition is degenerative. Dr. Wright, as well as Dr. Appelbaum, was of the view that the Claimant was employable in the Spring of 1982. He said just that in a March, 1982 letter to the bank. Six months later, however, based upon his continuing observations, Dr. Wright reported that Claimant's condition had significantly degenerated and that he had become unemployable.

Moreover, Dr. Wright observed further deterioration in Claimant's condition between September, 1982 and June, 1983. There is no medical evidence in the record to suggest that the steady deterioration in Claimant's condition described by Dr. Wright is overstated or nonexistent. When one takes that degeneration into account, there is no basis for reading the medical testimony in this record to be in conflict.

■ The Secretary also places weight on Claimant's demeanor and testimony at the May, 1983 hearing. As the ALJ noted, Claimant appeared to comprehend the questions and to provide appropriate responses. To be sure, the ALJ is not obligated to ignore Claimant's testimony, but Claimant's physicians have unanimously judged that his responses indicate the presence of severe neurological problems. The ALJ may not substitute his personal reac-

tion to Claimant's responses or physical appearance for the opinion of the treating physicians. *See Dennis v. Heckler,* 756 F.2d 971, 976 (3d Cir.1985); *Kelly v. Railroad Retirement Board,* 625 F.2d 486, 494 (3d Cir.1980). This is particularly true in a case like this where Claimant's treating physician had reported that Claimant's "outward condition appears normal." Thus, the ALJ erred when, based on his observations of Claimant at the hearing, he substituted his own opinion for that of the trained medical experts who had examined Claimant. *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978); *Lewis v. Weinberger,* 541 F.2d 417, 421 (4th Cir.1976).

## V.

The remaining question is whether this case should be remanded to the Secretary for further proceedings or reversed with a direction that benefits be awarded. We discussed the relevant considerations recently in *Podedworney v. Harris,* 745 F.2d 210, 221–2 (3d Cir.1984):

A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's position with or without a remand to the Secretary for a rehearing. The Court of Appeals also retains this discretion, and, in reversing or modifying the Secretary's position, may choose to remand to the Secretary for a further hearing or simply direct the district court to award benefits. *See, e.g., Parsons v. Heckler,* 739 F.2d 1334 at 1341 (8th Cir.1984); *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984); *Lewin v. Schweiker,* 654 F.2d 631, 635 [ (9th Cir.1981) ].

■ The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits. *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). *See Parsons v. Heckler,* 739 F.2d 1334 at 1341 (8th Cir.1984); *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984);

*Baugus v. Secretary of H.H.S.* 717 F.2d 443, 448 (8th Cir.1983); *Rini v. Harris,* 615 F.2d 625, 627 (5th Cir.1980); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 44 (2d Cir. 1972). When faced with such cases, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits.

*See also Livingston v. Califano,* 614 F.2d 342, 345 (3d Cir.1980) (Where Secretary does not rebut plaintiff's *prima facie* showing of disability, a reviewing court may choose to reverse without remanding); *Rossi v. Califano,* 602 F.2d 55, 59 (3d Cir. 1979); *Tustin v. Heckler,* 591 F.Supp. 1049, 1059 (D.N.J.1984), *vacated in part and remanded,* 749 F.2d 1055 (3d Cir.1984) (in fiscal 1983, in 29.4% of "Disability Final Court Decisions" by district courts, the Secretary's disability determinations were reversed without remand).

In this case, the administrative record is well developed. Substantial and uncontradicted evidence in that record indicates that the Claimant is disabled and entitled to receive benefits without further extended delay. For these reasons, we see no reason to remand for further consideration of whether the Claimant is disabled.

We do, however, find it necessary to remand for a prompt determination of the date upon which the Claimant first became entitled to benefits. The undisputed evidence indicates that Claimant was disabled as of the time of his application for benefits in October of 1982. At the same time, the record would support a finding that Claimant's disability did not have its onset as early as March of 1982 as he claims. Because the ALJ found that Claimant had not become disabled as of the date of his decision, he had no occasion to determine the date of onset. Depending on when that date is fixed, Claimant may be entitled to benefits from a point earlier or later than the date his application was filed. *See* 20 C.F.R., §§ 404.315, 404.621(a) (1985).

The judgment entered in favor of the Secretary will be vacated and the case will be remanded to the district court with instructions that it award benefits to Gilliland and remand to the Secretary for a speedy determination of the date of first entitlement.