**Elizabeth A. RIEDER, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Defendant.**

**No. 1:98–CV–608.**

United States District Court, M.D. Pennsylvania.

Sept. 30, 2000.

David I. Fallk, Scranton, PA, for Elizabeth A. Reider.

Barbara Kosik Whitaker, Assistant U.S. Attorney, Scranton, PA, for Kenneth Apfel.

## MEMORANDUM

MUNLEY, District Judge.

Before the court is an action brought pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security (hereinafter "Commissioner"). The Commissioner denied plaintiff's claim for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI") under Titles II and XVI of the Social Security Act (hereinafter "Act"), 42 U.S.C. §§ 401–433, 1381–1383.

Before the court for disposition are plaintiff's objections to the report and recommendation of United States Magistrate Judge Thomas M. Blewitt recommending that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted. For the reasons that follow, we will not adopt the report and recommendation of the magistrate judge and will reverse the findings of the ALJ.

### Background

Plaintiff filed applications for DIB on April 12, 1996, and protectively filed her application for SSI on October 29, 1996. Record (hereinafter "R.") 66–69, 228–31. In those applications the plaintiff alleged an inability to work since April 3, 1995 due

to seizures, depression, and pain and swelling in her right leg.[1] Initially and upon a motion for reconsideration, the claim was denied and eventually came before an administrative law judge (hereinafter "ALJ") on May 22, 1997. R. 45, 46–49, 52–54 Plaintiff was represented by counsel at the hearing.

The ALJ issued a decision on July 1, 1997, holding that the plaintiff was not disabled within the meaning of the Act. R. 12–26 The judge found that plaintiff, who was forty-three years old at the time, had a combination of impairments that were severe and that would preclude the performance of her past relevant work, but that she would be able to perform light work with some restrictions. R. 19–21. Plaintiff sought review by the Appeals Council and her request was denied on February 14, 1998. R. 6–7. Consequently, the ALJ's decision became the "final decision" of the Commissioner.[2]

Accordingly, plaintiff brought the present action. As noted above, currently before the court are cross-motions for summary judgment. The magistrate recommends that we deny the plaintiff's motion and grant the defendant's motion. The plaintiff has filed objections to the magistrate's report and recommendation. The parties have briefed their respective positions, and the matter is thus ripe for disposition.

**Standard of Review**

When objections are filed to a report and recommendation of a magistrate judge, the court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa.1993). The court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens, supra* at 738. Although the review is *de novo*, the court is permitted by statute to rely on the magistrate judge's proposed recommendation to the extent the court, in the exercise of sound discretion, deems proper. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir.1984); *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D.Pa.1994).

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir.1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is less than a preponderance of the evidence but more than a mere scintilla. *Id.*

**Discussion**

Plaintiff objects to the ALJ's findings on several grounds. First, the plaintiff alleges that the magistrate did not give proper weight to the reports of the treating physicians, particularly Dr. Sebastianelli, and the testings and findings of Dr. Harvey, the examining neuropsychologist; second, that the magistrate did not consider the improper use of the Psychological Review Technique Form without the benefit of expert medical testimony; and third, that the magistrate and the ALJ do not cite sufficient, contrary medical evidence to offset the high legal standard regarding great weight which should have been accorded to plaintiff's medical evidence and plaintiff's complaints.

---

1. In 1997, the plaintiff began to notice that she was having poor concentration and difficulty with her memory. It was in 1997 that Dr. Das noted these symptoms and referred the plaintiff to Dr. Harvey for further testing. R. 208

2. Hence, for the remainder of our memorandum, the terms "ALJ" and "Commissioner" are used interchangeably.

### 1. Eligibility Evaluation Process

Disability is defined in the Social Security Act in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace. In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). The Act further provides that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); and *Heckler v. Campbell*, 461 U.S. 458, 459–60, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

In the analysis of disability claims, the Commissioner employs a five-step sequential evaluation. 20 C.F.R. § 416.920. The initial three steps are as follows: 1) whether the applicant is engaged in substantial gainful activity; 2) whether the applicant has a severe impairment; 3) whether the applicant's impairment meets or equals an impairment listed by the Secretary of Health and Hum an Services as creating a presumption of disability. If it does not the claimant must show: 4) whether the applicant's impairment prevents the applicant from doing past relevant work; See 20 C.F.R. §§ 404.1520, 416.920. If the applicant establishes steps one through four, then the burden is on the Commissioner to demonstrate the fifth step, that there are jobs in the national economy that the claimant can perform. *Jesurum v.*

*Secretary of the U.S. Dept. of Health and Human Services,* 48 F.3d 114, 117 (3d Cir.1995).

Whether jobs exist in the national economy that the claimant can perform can be established by the Commissioner in several ways. Where the claimant's residual functioning capacity fits within the definitions promulgated in Department of Health and Human Service regulations, the burden of demonstrating that work exists for the claimant in the national economy can be met by reference to tables promulgated by administrative rulemaking (the "grids"). *Id.* For example, if the Commissioner finds that the claimant can do "substantially all" the tasks that fall under the definition of "light work" or "sedentary work" the availability of work can be determined using the "grids". *Id.* at 119. However, in cases where the claimant cannot apply the grids because the claimant does not fit within one of the promulgated definitions, the commissioner is permitted to prove that the claimant is capable of performing jobs in the national economy through other methods, such as the testimony of a vocational expert. *Id.* at 121.

In the instant case, the ALJ found that the plaintiff met the disability insured status requirements of the Act as of her alleged onset date of disability, which was April 3, 1995, and continues to meet them through December 31, 2000. R. 24. The ALJ next found that the plaintiff has impairments which taken together are severe[3], but the ALJ also found that she does not have a combination of impairments severe enough to meet or equal the requirements of the listing of impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17. The ALJ stated that he found the plaintiff's testimony not to be fully credible. R. 21, 25. He found that her allegations of pain and limitations were

---

**3.** The impairments of plaintiff are: partial seizures that she has been treated for relating to a car accident she was involved with at age nine; mixed-type headaches; muscular con-

traction and vascular components; anxiety disorder; seizure disorder; and adjustment disorder with depressed mood. R. 17, 24.

overstated and somewhat exaggerated. *Id.*

The ALJ also found that the plaintiff does not have the residual functional capacity to perform her past relevant work as a nurse's aide because this work was determined to be medium work. R. 23, 25. The ALJ found that there are jobs which exist in the state and national economies, as well as the local region in significant numbers, which the plaintiff could perform. R. 23, 25. Thus, the ALJ found that the plaintiff was not disabled.

## 2. Merits of the Appeal

■ The basic issue that has been appealed to this court is the question of whether substantial evidence supports the ALJ's finding that the plaintiff was not disabled. This court has a responsibility to scrutinize the entire record and to reverse or remand if the decision is not supported by substantial evidence. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981). In our analysis of the record, we have determined that the ALJ did not base its conclusion on substantial evidence and have decided to reverse the decision.

## A. Weight Given to Treating Physician, Dr. Kenneth Sebastianelli

■ First, we will address the plaintiff's allegation that the magistrate did not give proper weight to the reports of the treating physicians, particularly Dr. Sebastianelli, and the testings and findings of Dr. Harvey, the examining neuropsychologist. The Third Circuit Court of Appeals has found that "evidence will not satisfy the substantiality test if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). In the instant case, we find that the ALJ's decision does not pass the substantiality test, being that the ALJ did not give proper weight to the submissions of Dr. Kenneth Sebastianelli, did not give proper weight to the results of the neuropsychological report by Dr. John Harvey, and put too much emphasis on certain parts of the reports of Dr. Amit Das.

In making a decision regarding the determination of social security benefits, it has been held that a treating physician's report is to be given special significance. *See Morales v. Apfel,* 225 F.3d 310, 2000 WL 1196330 (3d Cir.) (finding that the ALJ did not give proper weight to treating physician's opinion regarding disability of claimant). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." " *Morales,* 225 F.3d 310, 316 (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir. 1987)). In addition, "a treating physician's report not only may be given *more* weight, it *must* be given *controlling* weight if so supported. 20 C.F.R. § 404.1527.

■ When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in its analysis, but "cannot reject evidence for no reason or for the wrong reason." *Morales,* 225 F.3d 310, 316 (quoting *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999)). In choosing to reject the evaluation of a treating physician, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales,* 225 F.3d at 316 (quoting *Plummer,* 186 F.3d at 429); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988).

In the instant case, we find that the ALJ's and magistrate's refusal to credit Dr. Sebastianelli's opinion was not based on objective medical evidence. The magistrate judge rejected Dr. Sebastianelli's assessment that the plaintiff was disabled, as he found that Dr. Sebastianelli's opinion was not supported by medically acceptable

clinical and laboratory diagnostic techniques and, therefore, need not have been accepted by the ALJ. After our analysis of the record and review of the above-cited law regarding "treating physicians," we find that the magistrate's finding was erroneous.

We agree with the plaintiff in finding that Dr. Sebastianelli: 1) had personally known the claimant and observed her at work both before and after the February 3, 1995 accident; 2) had examined and treated the claimant over a period of time; and 3) had recommended neurological and neuropsychological evaluation and had reviewed the reports of such evaluations.[4] We therefore find that Dr. Sebastianelli based his disability decision on objective medical evidence. The record did not include in-depth analysis by Dr. Sebastianelli, but did include a letter detailing his basis for finding that the plaintiff was disabled, and forms addressing the plaintiff's condition and classifying her as permanently disabled. Dr. Sebastianelli concluded that the plaintiff was permanently disabled, based on her cognitive disfunction, seizure disorder, anxiety and depression. R. 215. Contrary to what the magistrate concludes, we do not find that there was sufficient contrary evidence to support outright rejection of Dr. Sebastian elli's conclusions. *See e.g. Morales,* 225 F.3d at 316.

In addressing the evidence presented by the doctors in this case, we find all of the reports when taken together support the conclusion that the plaintiff *is* disabled. We have already discussed the conclusions of the plaintiff's treating physician, Dr. Sebastianelli, who determined that the plaintiff was permanently disabled and would not be able to work. In addition, Dr. Harvey performed a neuropsychological evaluation on the plaintiff and concluded that the plaintiff has significant memory deficits, and weakness in paying attention to detail and therefore would be expected to have difficulty with any type of vocational activity.

## B. Weight Given to Dr. Amit Das

The other medical report that is addressed in the ALJ opinion is that of Dr. Am it Das. R. 154–171. The reports of Dr. Das, which the magistrate and ALJ place a great deal of emphasis on, do not directly state whether the plaintiff is or is not disabled. Dr. Das was never asked to make such a determination. The magistrate and ALJ, however, concluded, based on selected parts of the reports, that Dr. Das would determine that the plaintiff was not disabled. We do not find that there is substantial evidence to make such a finding. Dr. Das, in one of his more recent reports stated that the plaintiff "went to the Emergency Room at CMC today with complaints of nausea, heart burns, pressure in the head, tremulousness and feeling of shaking in the side." R. 154. In addition, Dr. Das found that the plaintiff had: 1) complex partial seizures—related to her prior head injury; 2) mixed type of headaches with muscle contraction and vascular components; 3) an anxiety disorder; and 4) a possible cognitive impairment.

In our review of the record, we find that Dr. Das' reports coincide with both the reports of Dr. Sebastianelli and Dr. Harvey and support the conclusion that the plaintiff is disabled. The ALJ does correctly cite Dr. Das's statement that "patient did not have any seizures recently." R. 208 (Jan. 28, 1997 report). However, Dr. Das also stated in that same report that the patient "suffers from complex partial seizures since 1980." R. 208. This leads one to believe that Dr. Das was not confident that the seizures had stopped occurring to the plaintiff. In addition, both the ALJ and the magistrate found that the claimant's seizures are under control with medications. R. 22, Report and

---

4. I.e., all of the reports submitted by Dr. Das were addressed to Dr. Sebastianelli, being that he was the treating physician for the plaintiff. In addition, Dr. Sebastianelli reviewed the neuropsychological report submitted by Dr. Harvey in April 1997.

Recommendation, at 8. The ALJ also stated that the longstanding seizure disorder is fairly well controlled by Tegretol. R. 23

We find that the ALJ and magistrate improperly gave great weight to the notation by a doctor that the plaintiff was stable with medication. "The relevant inquiry when making a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity." *See Morales*, 225 F.3d at 319 (citing 42 U.S.C. § 423(d)(1)(A)). For a person, such as the plaintiff who suffer from an anxiety disorder, frequent headaches, and also likely suffers from cognitive problems, "the work environment is completely different from home or a mental health clinic." *Morales*, at 319. Therefore, we find that the fact that there are statements that say that the seizures have recently been controlled with medication, does not support the medical conclusion that the plaintiff can return to work. *Id.*

The medications which Dr. Das states have helped to control the seizures, also appear to be causing side effects. This further supports a finding that there is a disability. Dr. Das stated in his most recent report that the plaintiff had been complaining of side effects of the Tegretol, particularly that she was having poor concentration and difficulty with memory, and that those symptoms had affected the patient's nursing work.[5] R. 208. After that same examination, Dr. Das referred the plaintiff to Dr. Harvey for neuropsychological testing to check her cognitive functions.

The ALJ and magistrate, however, afford very little weight to the testing and conclusions reached by Dr. Harvey. The magistrate in the report, instead focused on the finding in Dr. Das's examinations that he only saw a minimal impairment of the plaintiff's short term memory. R. 208.

The magistrate fails to note, however, that it was Dr. Das who recommended neuropsychological testing and referred the plaintiff to Dr. Harvey for such testing. R. 196, 209. Dr. Das made this referral after determining in his final report that the patient was potentially suffering from concentration problems and difficulty with memory at the workplace. R. 208. Therefore, Dr. Harvey's report should be looked at in conjunction with the reports of Dr. Das.

## C. Weight Given to Dr. Harvey's Neuropsychological Test

If there is any contradiction in the findings by Dr. Das and Dr. Harvey, we find that the in-depth examination of Dr. Harvey should be given more weight. In addition to the fact that it was Dr. Das who referred the plaintiff to Dr. Harvey for the additional testing, we agree with the plaintiff's assertions that: 1) Dr. Harvey's report supersedes Dr. Das's reports in terms of date; 2) Dr. Harvey's report is far more detailed (10 page report). R. 196–205; 3) Dr. Harvey's technique tested several areas and appeared to be more detailed than the quick tests done by Dr. Das during his evaluations; and 4) the validity testing in Dr. Harvey's report seemed to validate the credibility of the plaintiff's complaint.[6] Thus, we find that the neuropsychological test and Dr. Harvey's conclusion that the plaintiff would have difficulty with any vocational activity should affect the determination of whether the plaintiff has a disability.

We find that Dr. Harvey's testing and conclusions should be seen as complementary to Dr. Das's reports and not as being contradictory, especially being that it was Dr. Das who sought out Dr. Harvey's expertise in this area. Additionally, we find that neuropsychological testing is a valid

5. Dr. Das states that the cognitive impairment could be related to plaintiff's prior head injury rather than a side effect of the medications.

6. Dr. Harvey reported that the claimant's memory indicated moderate to severe deficits

in verbal memory with average range visual memory. In the area of verbal memory, deficits were noted with immediate working and remote memory. Dr. Harvey reported that she also had difficulty retrieving information from remote verbal memory. R. 18, 196.

and detailed means of testing for injury or illness. *See Dombroski v. Apfel,* 1998 WL 372551 (E.D.Pa.) (finding that ALJ should not have discredited fully objective neuropsychological test results); *Gilliland v. Heckler,* 786 F.2d 178, 181 (3d Cir.1986). For all of the above reasons, we find that Dr. Harvey's findings must be accorded proper weight and examined in conjunction with the reports of Dr. Das and Dr. Sebastianelli.

## D. Psychiatric Review Technique Form

The ALJ, in reaching his conclusion, used a psychiatric review technique form. The ALJ found that the "combination of impairments ... do not rise to listing level severity." R. 23. When filling out this form, the ALJ had already determined not to accord much weight to the main conclusions of Dr. Harvey and Dr. Sebastianelli. The Third Circuit Court of Appeals ·has criticized the use of such forms when an ALJ relies on his non-expert observations at a hearing and has stated that they represent not much more than the roundly condemned "sit and squirm" method of deciding disability cases. *See Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983)[7]. The opinions of the ALJ in this form go against the opinions of Dr. Harvey and Dr. Sebastianelli, in that both doctors found that the plaintiff was disabled and unable to work as a result of her conditions.[8] Therefore, as was the situation in the *Van Horn* case, the ALJ reached his conclusions by relying on his own non-expert observations.[9]

**7.** There is no evidence that the ALJ consulted a psychiatrist in filling out this form after the hearing.

**8.** Dr. Harvey specifically stated that the plaintiff had significant memory deficits and would have difficulty with any type of vocational activity.

**9.** The magistrate found that the ALJ was justified in using this form to come to the conclusion that the plaintiff's conditions did not rise

## E. Non–Work Activities of Plaintiff and Plaintiff's Credibility

In coming to their conclusions, the ALJ and magistrate also failed to properly address the testimony of the plaintiff regarding her usual daily activities. Both the ALJ and magistrate alleged that the plaintiff had questionable credibility and therefore questioned her actual limitations and her doctors' determinations that she was disabled and would have trouble working.[10] R. 21, 25. However, as we stated earlier, an ALJ "may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales,* at 316 (quoting *Plummer,* 186 F.3d at 429). In the instant case, the ALJ made credibility judgments about the plaintiff that were not based on substantial evidence.

▮ The ALJ and magistrate Judge had problems with the plaintiff's credibility based primarily on their assessment of the plaintiff's non-work activities. The ALJ based its conclusion that the plaintiff can perform certain kinds of work based on the fact that she shops for groceries, cleans her house, does laundry, washes the dishes, cooks, drives her car, plays cards, plays billiards, watches television, listens to music, goes for walks, visits relatives, and reads. R. 22. First, we do not find that the fact that the plaintiff is able to enjoy herself with her disability is a ground for finding that she has no credibility and has the ability to work. In addition, the law does not require a complete restriction from recreational and other activities as a prerequisite to a finding of

to listing level severity. However, the magistrate came to this conclusion based on the fact that he found that Dr. Das's reports contradicted the findings of Dr. Harvey. As we stated earlier, we find that conclusion to be erroneous.

**10.** The ALJ stated that he found the plaintiff's testimony not to be fully credible. R. 21, 25. He found that her allegations of pain and limitations were overstated and somewhat exaggerated. *Id.*

disability. *Smith,* 637 F.2d at 968; *Wright v. Sullivan,* 900 F.2d 675 (3d Cir.1990).

The ALJ seems to have relied heavily on the fact that claimant had testified she did household activities and occasionally involved herself in recreational activities. Yet, statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith,* 637 F.2d at 971–72. The plaintiff's activities are miniscule when compared to a plethora of cases which have held that there was total disability even when the claimant was more active.

It is well established that sporadic or transitory activity does not disprove disability. *Yawitz v. Weinberger,* 498 F.2d 956 (8th Cir.1974). In that case, the plaintiff suffered from disabling headaches, although he drove a car, took cross country camping trips and did considerable handiwork around the house. In the instant case, the plaintiff did not perform any activities as taxing as cross country camping trips, but rather performed activities necessary to live together with a few sedentary recreational activities. In the *Yawitz* case, the court overturned the ALJ and ruled the claimant disabled. *Id.* Other courts have determined that sporadic and transitory activities may demonstrate not an ability but an inability to engage in substantial gainful activity. *Wilson v. Richardson,* 455 F.2d 304, 307 (4th Cir. 1972). In the instant case, we find that the sporadic and transitory nature of the plaintiff's activities demonstrate not her ability but her inability to engage in substantial gainful activity. Therefore, we find that there was not substantial evidence for the ALJ or magistrate to conclude that the plaintiff was totally unable to work.

**F.  Work History of Plaintiff**

██  Finally, we find that the ALJ and magistrate failed to properly address the work history of the plaintiff and her post-accident unsuccessful work attempts. The evidence demonstrates that the plaintiff throughout her life almost always had a job. The plaintiff has held jobs since finishing high school with the following employers: Meering Convent, Allied, Taylor Nursing Home, a telemarketing company, the Globe Store, and Northwestern Bank. R. 260–62. After examining the record, we find that the plaintiff was always working or looking for a new job. When a claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). In the instant case, the ALJ did not accord much credibility at all to the plaintiff's claim that she now is no longer able to work because of her condition.

The record demonstrates that after her accident and after her filing for benefits, the plaintiff attempted to work several times in 1996. R. 219–227. However, each time her attempts were unsuccessful. The problems that she was having at work coincided with the medical problems from which she has suffered. She failed to complete tasks, lost a set of keys, and forgot to transcribe an order for a drug. *Id.* These work problems help to substantiate the findings of Dr. Harvey that she has "significant memory deficits and at this point would be expected to have difficulty with any type of vocational activity." R. 204. The ALJ and magistrate, however, failed to address all of this evidence in the record, in making their determination that the plaintiff is still able to work.

**3.  Conclusion**

We find that the ALJ's conclusion that claimant did not have a statutory disability is, as a matter of law, just too speculative to be sustainable. Our analysis of the record demonstrates that the ALJ and magistrate failed to accord proper weight to the opinions of the treating physician, Dr. Sebastianelli, and failed to accord

proper weight to the neuropsychological testing by Dr. Harvey. Therefore, the ALJ and magistrate failed to address the fact that there was evidence that the plaintiff had memory and concentration problems, which when combined with her other problems, lead to the conclusion that she is disabled.

In addition, there are other reasons why we find that the ALJ's findings are not supported by substantial evidence. We find that there is support for the contention that too much emphasis was placed on the fact that medications are currently helping to control the plaintiff's seizures. The ALJ and magistrate did not discuss what the effects of the work environment might be on the plaintiff's seizure problem. The ALJ and magistrate improperly found the plaintiff not to be credible because she performed some housework and a few recreational activities and the ALJ and magistrate did not properly address the plaintiff's work history when analyzing the reports of the doctors.

We therefore find that the ALJ's conclusion that the plaintiff can find other jobs in the local and national economy and is not disabled must be reversed. This determination rested on the rejection of the medical reports by Dr. Harvey and Dr. Sebastianelli, and was based on the ALJ's personal observations and speculation, and the testimony of a non-examining vocational expert. We do not find that the vocational expert's testimony is sufficient to establish that the plaintiff could perform light work with certain restrictions. "Vocational expert testimony alone does not provide the necessary substantial evidence from which to deduce a capacity to engage in substantial gainful activity when there is overwhelming evidence to the contrary in the record." *Morales*, at 320 (quoting *DeLeon v. Secretary Health and Human Services*, 734 F.2d 930, 934–35 (2d Cir.1984)). Since the opinions of Dr. Harvey, Dr. Sebastianelli, and the reports of Dr. Das, all presented counterveiling evidence to the vocational expert's determination, we find that testimony does not meet the substantiality test.

Therefore, even though the ALJ determined that the plaintiff's disability did not meet the appropriate listing, she is entitled to benefits unless the ALJ can point to substantial record evidence indicating that the plaintiff, given her residual capacity, age, and skills, is still able to perform specific jobs that exist in the national economy. *Podedworny*, 745 F.2d at 216. For the above reasons, we find that the ALJ did not point to substantial evidence.

■■■ The remaining question is whether this case should be remanded to the Secretary for further proceedings or reversed with a direction that benefits be awarded. A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing. The Court of Appeals also retains this discretion and, in reversing or modifying the Secretary's decision, may choose to remand to the Secretary for a further hearing or simply direct the district court to award benefits. See, e.g., *Podedworny*, 745 F.2d at 221; *Pagan v. Apfel*, 1998 WL 962120 (E.D.Pa.).

■■■ The district court can award benefits only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits. *Gilliland v. Heckler*, 786 F.2d 178 (3d Cir. 1986); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982). When faced with such cases, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits. *See Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.1980). This decision whether to reverse or remand lies within the discretion of the court. See, e.g., *Gilliland*, 786 F.2d at 185; *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980); *Tustin v. Heckler*, 591 F.Supp. 1049, 1059 (D.N.J.1984), vacated in part

and remanded, 749 F.2d 1055 (3d Cir.1984) (finding that in fiscal 1983, in 29.4% of "Disability Final Court Decisions" by district courts, the Secretary's disability determinations were reversed without remand).

In the instant case, we find that the record is extensive and well developed. The record consists of almost three hundred pages and includes the medical records of the several doctors who have examined the plaintiff. Substantial evidence in that record indicates that the plaintiff is disabled and entitled to receive benefits without further extended delay. For these reasons, we see no reason to remand for further consideration of whether the Claimant is disabled.

We have determined, therefore that this case should be reversed, with direction that the benefits be awarded to the claimant, as we find that substantial evidence does not support the decision that for the relevant period, the plaintiff was not disabled under the Act.[11] Accordingly, the magistrate's report and recommendation shall be overruled. An appropriate order follows.

### ORDER

**AND NOW,** to wit this 30th day of September 2000, the magistrate's report and recommendation [12–1] is not adopted and furthermore, it is hereby **ORDERED** that:

1) The plaintiff's motion for summary judgment [7–1] is **GRANTED.** The denial of disability benefits is **REVERSED** and disability benefits are awarded to the plaintiff;

2) The defendant's motion for summary judgment [9–1] is **DENIED;** and

3) The Clerk of Court is directed to close this case.

---

**11.** *See e.g. Glassic v. Heckler,* 1986 WL 8495 (E.D.Pa.) (finding that the ALJ's determination that the claimant was not disabled should be reversed and that disability benefits should be awarded).